# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**METROPOLITAN SOLUTIONS GROUP, INC.,**
     *Plaintiff,*

v.

**VIVIAN DAMARIS RODRIGUEZ,**
  Serve at: 4 E. Bayberry Court
      Hampton, VA, 23669

**IRMA AIDALI ROJAS DE ROMERO,**
  Serve at: 700 Silverbrooke Drive
      El Cajon, CA 92019

**PATRICIA MARTINEZ DUARTE,**
**Individually and trading as "PMD Interactive"**
  Serve:  973 Wind Cave Place
      Chula Vista, CA 91914

**ILLUSTRA SERVICES LLC,**
A California limited liability company,
  Serve:  Vivian Damaris Rodriguez, Registered Agent
      4 E. Bayberry Court
      Hampton, VA, 23669

**ILLUSTRA SERVICES LLC,**
A Virginia limited liability company,
  Serve:  Irma Aidali Rojas de Romero, Registered Agent
      700 Silverbrooke Drive
      El Cajon, CA 92019

**NICHOLAS FLORES,**
**Individually and trading as "Main Deck Professional Training Services"**
  Serve at: 46735 Peach Tree Street
      Temecula, CA 92592
**and**

**NICHOLAS RAY HOLLADAY,**
Serve at: 10141 Settle Road
     Santee, CA 92071,

     *Defendants.*

Case No. _____

1

## COMPLAINT

COMES NOW the Plaintiff, Metropolitan Solutions Group, Inc., and demands that this Court enter judgment against the Defendants named above, jointly and severally, in the amounts and for the causes of action set forth below.

## THE PARTIES

1.      Plaintiff Metropolitan Solutions Group, Inc. ("Metropolitan") is a corporation organized and existing pursuant to the laws of the state of Nevada.  At all times relevant hereto, the Plaintiff has maintained a business location in Portsmouth, Virginia, which lies within the jurisdiction of this Court.

2.      Defendant Vivian Damaris Rodriguez ("Rodriguez") is a resident of Hampton, Virginia and is a member and/or manager of the Virginia limited lability company known as "Illustra Services, LLC".

3.      Defendant Irma Aidali Rojas De Romero ("Romero") is a resident of El Cajon, California and is a member and/or manager of the California limited liability company known as "Illustra Services, LLC".

4.      Defendant Patricia Martinez Duarte ("Duarte") is a resident of Chula Vista, California.  Defendant Duarte registered the fictitious business name for her sole proprietorship "PMD Interactive" on January 27, 2016.  Defendant Duarte is the organizer and a member and/or manager of the Virginia and California limited liability companies that both use the name "Illustra Services, LLC".

5.      Defendant Illustra Services, LLC, ("Illustra - CA") is a California limited liability company that was organized by Defendant Duarte on June 1, 2020; its principal office is located in Chula Vista, California.  Plaintiff alleges that Illustra – CA is the alter ego of Defendants

Duarte and Romero (and perhaps others) and was established for the purpose of perpetrating fraud and other torts upon Plaintiff Metropolitan.

6.      Defendant Illustra Services, LLC, ("Illustra - VA"), is a Virginia limited liability company that was organized by Defendant Duarte on December 3, 2020; its principal office is located in Hampton, Virginia.  Plaintiff alleges that Illustra – VA is the alter ego of Defendants Duarte and Rodriguez (and perhaps others) and was established for the purpose of perpetrating fraud and other torts upon Plaintiff Metropolitan.   (Illustra – CA and Illustra – VA are collectively referred to below as "Illustra Pro".)

7.      Defendant Nico Flores ("Flores"), is a resident of Temecula, California and is employed as a trainer by Defendants Illustra – CA and Illustra - VA and/or by Defendant Duarte. Defendant Flores registered the fictitious business name for his sole proprietorship "Main Deck Professional Training Services" ("Main Deck") on April 9, 2020.  Plaintiff alleges that Main Deck, as a sole proprietorship, is the alter ego of Defendant Flores and was established for the purpose of perpetrating fraud and other torts upon Plaintiff Metropolitan.

8.      Defendant Nicholas Ray Holladay ("Holladay"), is a resident of Santee, California and is employed as a trainer by Defendants Illustra – CA and Illustra - VA and/or by Defendant Duarte, either directly with the Illustra entities or through Main Deck.

## JURISDICTION AND VENUE

9.      Diversity of citizenship exists between the Plaintiff and each of the Defendants.

10.      The amount in controversy in this action is in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) exclusive of interest and costs.

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

12.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(1).

## FACTUAL ALLEGATIONS

13.     The Plaintiff is engaged in the business of providing specialized occupational training to actual and prospective employees of business entities which need to comply with OSHA and related occupational regulations, laboratory testing, environmental engineering, and occupational health training procedures.

14.     The Plaintiff operates its business through three limited liability companies, of which the Plaintiff is the sole Member/owner.  The limited liability companies are Metropolitan Solutions-CA, LLC, a California limited liability company; Metropolitan Solutions-VA, LLC, a Virginia limited liability company; and Metropolitan Solutions, LLC, a Washington state limited liability company.

15.     The Plaintiff has been engaged in its business since May of 2011, resulting in the development and acquisition of valuable proprietary information such as customer lists, occupational training methods, business methods and procedures, intellectual property, trade secrets, unique procedures, business models, customer and marketing contacts and procedures, and other confidential information (all of which is hereinafter collectively referred to as "trade secrets").

16.     In order to protect Plaintiff's trade secrets, the Plaintiff has required its employees and many of its vendors to execute nondisclosure agreements and/or employment agreements containing noncompete provisions and provisions prohibiting the disclosure of trade secrets.

17.     In addition to the steps Plaintiff undertook to protect its trade secrets, such trade secrets are subject to protection by statutes such as the California Uniform Trade Secrets Act, Cal. Civ. Code §§3426, *et seq.* and the Virginia Uniform Trade Secrets Act, Va. Code Ann. §§59.1-336 *et seq.*

18. Defendant Flores was employed by Plaintiff in its San Diego office from August 26, 2019 to February 14, 2020. On or about August 27, 2019, Defendant Flores executed the Non-Disclosure Agreement attached hereto as Exhibit A. Metropolitan paid for the classes that were required for Defendant Flores to become a certified occupational Trainer.

19. Defendant Holladay was employed by Plaintiff in its San Diego office from August 7, 2017 to November 15, 2020. During the time both Flores and Holladay worked for Metropolitan, they made up one-half of Metropolitan's occupational training staff. Holladay functioned as the West Coast Operations Manager and Training Director; he also performed certain HR administrative functions in the San Diego office. Metropolitan paid for the classes that were required for Defendant Holladay to become a certified occupational Trainer.

20. On or about August 7, 2017, Defendant Holladay executed a Non-Disclosure Agreement in conjunction with his acceptance of Plaintiff's offer of employment to him. On information and belief, Defendant Holladay removed his executed Nondisclosure Agreement from his personnel file between November 15, 2020, when he was advised that he was being furloughed due to a lack of work, and November 21, 2020, his last day on the job. Holladay also deleted emails from his company email despite being told by Metropolitan's Chief Operating Officer not to do so. The Nondisclosure Agreement signed by Holladay would have been in the same form and content as Exhibit A.

21. Defendant Romero was employed by Plaintiff in its San Diego office as the West Coast Accounts Receivable Administrator from October 2, 2018 to December 31, 2020. In this position, Romero was personally responsible for booking and billing all of Metropolitan's West Coast occupational training customers. She therefore had access to the contact information for

all of Metropolitan's West Coast occupational training customers.    Romero also had access to sensitive accounting information in the QuickBooks accounting system used by Metropolitan. On or about October 2, 2018, Defendant Rodriguez executed the "Agreement Not to Disclose and Compete" and the "Employee Confidentiality Agreement" attached hereto as group Exhibit B.

22.    Defendant Rodriguez was employed by Plaintiff in its Portsmouth, Virginia office as the East Coast Accounts Receivable Administrator from January 28, 2020 to January 4, 2021. In this position, Rodriguez was personally responsible for booking and billing all of Metropolitan's East Coast occupational training customers.  She therefore had access to the contact information for all of Metropolitan's East Coast occupational training customers. Rodriguez also had access to sensitive accounting information in the QuickBooks accounting system used by Metropolitan.   Rodriguez was terminated on January 4, 2021 due to a reorganization of company-wide administrative functions.  Metropolitan paid Rodriguez a year-end bonus and made arrangements with a local employment agency to work with Rodriguez to help her become re-employed as quickly as possible.  When Metropolitan received Rodriguez' application for unemployment benefits, Metropolitan expedited its return to the Virginia Employment Commission so that Rodriguez would receive her unemployment benefits as quickly as possible.  On or about January 28, 2020, Defendant Rodriguez executed the Non-Disclosure Agreement attached hereto as Exhibit C.

23.    Defendant Duarte performed marketing, business development and other special project services for Metropolitan in its San Diego Office from January 18, 2018 to December 31, 2020.   Defendant Duarte provided these services to Metropolitan as a 1099 independent contractor through her registered sole proprietorship "PMD Interactive".   One of Duarte's

specific marketing and business development duties was to create and maintain a database of all Metropolitan customers on the "Constant Contact" software platform. Pursuant to her duties for the Plaintiff, Duarte had access to Plaintiff's trade secrets, including, but not limited to, occupational training customer lists, marketing contacts, marketing procedures and processes, and occupational training methods, including the contact information for all of Metropolitan's occupational training customers and for the third party that Metropolitan uses to market its occupational training services.

24.     Defendant Duarte presented herself to the Plaintiff as diligent, hardworking, conscientious and loyal. Duarte even attended an after-hours course on occupational training for the purported reason of furthering her position with the Plaintiff. When Metropolitan's CEO found out that Duarte had taken this class, he was impressed by what he thought was Duarte's personal initiative and reimbursed her more than $800.00 for the class.

25.     On December 28, 2020, and after discussing the matter with Duarte for several months, Plaintiff offered Duarte a position with Plaintiff as an employee. Duarte accepted the offer on December 30, 2020. A copy of the Plaintiff's offer of employment to Duarte, her acceptance thereof and her written receipt and acknowledgement of the Metropolitan Handbook is attached hereto as Exhibit D.

26.     Defendant Duarte knew that it was the practice and policy of Metropolitan to have every W-2 employee and every 1099 vendor (such as herself) sign a Nondisclosure Agreement for Metropolitan's benefit. One of the special projects Duarte worked on for Metropolitan was to assemble a "Process Controls Manual" of all of the forms that Metropolitan used in its business, including documents (such as the Nondisclosure Agreement) that Metropolitan required all employees and vendors to sign. She also acted as the "HR

Coordinator" in the San Diego office, charged with getting new employees to sign all required "new hire" documents and then forwarding those new hire documents to the HR Department.

27.    Because of her special activities relating to employee documents, Defendant Duarte knew how important it was to Metropolitan's management that everyone sign a Nondisclosure Agreement.  However, Duarte failed to sign a Nondisclosure Agreement herself. Even when she purported to accept Metropolitan's offer to become a W-2 employee on December 30, 2020, she failed to sign and return the Nondisclosure Agreement she had been given along with that offer of employment.

28.    All of Metropolitan's employees and independent contractors are bound by a Company Handbook, pages 34 and 35 of which are attached hereto as Exhibit E.  These pages provide employees and contractors with Metropolitan's policies concerning trade secrets, conflicts of interest, using proprietary information for personal benefit, the duty of confidentiality and of noncompetition and the consequences that one might face for violating these policies, including termination and possible legal proceedings.   Duarte was fully aware of the Handbook and these policies and her acceptance thereof and her written receipt and acknowledgement of the Metropolitan Handbook is part of Exhibit D.

29.    Plaintiff alleges that Defendant Duarte thoroughly understood the purpose and effect of the Metropolitan Nondisclosure Agreement.  Plaintiff further alleges that Duarte intentionally did not educate her conspiracy "recruits" as to the meaning and effect of the Nondisclosure Agreements that they had all signed.  Rather, Duarte induced the others to conspire with her to violate all of their respective Nondisclosure Agreements with Metropolitan (and to engage in other unlawful conduct) without making sure they understood the liability they

were exposing themselves to by going along with her plan to unlawfully use Metropolitan customers and to actively compete with Metropolitan.

30.     Unbeknownst to the Plaintiff, and specifically concealed by Duarte from the Plaintiff, sometime during the Spring of 2020 Duarte initiated a conspiracy with the other individual Defendants to use and obtain the Plaintiff's trade secrets by unlawful means in order to establish a new business enterprise under Duarte's supervision which directly competes with Metropolitan.  The name of the new business was initially "Illustra Pro Occupational Training" but it became "Illustra Services, LLC" when Duarte organized a limited liability company with that name with the California Secretary of State on June 1, 2020.

31.     Defendant Duarte recruited the other individual defendants one by one, knowing that their agreement to work with and for her, and for the limited liability companies she was setting up, was in clear violation of their Nondisclosure and Noncompete Agreements with Metropolitan, and in violation of other legal duties.

32.     Defendants Rodriguez, Romero, Holladay and Flores were all employees of the Plaintiff during all or part of the time that Defendant Duarte was performing work as an independent contractor for Metropolitan.

33.     Each of Defendants Duarte, Rodriguez, Romero, Holladay and Flores had access to Plaintiff's trade secrets and proprietary information, including but not limited to, occupational training customer lists, occupational training marketing contacts and occupational training methods.  Defendants Duarte, Rodriguez and Romero also had access to sensitive accounting information in the QuickBooks accounting system used by Metropolitan.

34.     Defendant Duarte, while performing work on the Plaintiff's behalf as an Independent Contractor, had access to the Plaintiff's trade secrets and proprietary information

and had a fiduciary duty to maintain its secrecy.  At all times relevant to this proceeding, Duarte knew that such information was the Plaintiff's property and trade secrets and was not subject to disclosure.  During the year 2020, while Duarte was scheming to misappropriate Plaintiff's trade secrets and proprietary information, and to induce all Defendants to breach their respective employee agreements, the Plaintiff paid Duarte in excess of forty-five thousand dollars ($45,000.00) in biweekly payroll payments.

35.    Duarte effectively recruited an entire occupational training company from the ranks of Metropolitan: the equivalent of one-half of Metropolitan's trainers, the two (and only two) billing clerks for occupational training at Metropolitan, and the person who was individually responsible for creating, building and developing Metropolitan's customer data base, including all of the contact information for all of Metropolitan's occupational training customers.  The unlawful businesses set up by Duarte and the other Defendants is a mirror-image of Metropolitan with training courses being offered in offices in San Diego and Hampton Roads.  The only missing ingredient was a "means to the market".

36.    Metropolitan's most important means of marketing its occupational training services is through its relationship with Zack Academy, a long-term business partner of Metropolitan.  Zack Academy partners with training providers nationwide such as Metropolitan to present all of those providers' occupational training offerings in a single forum.  This is the marketing methodology that Metropolitan has always used and is the foundation of Metropolitan's success in the occupational training industry.  Because Defendant Duarte knew Metropolitan exclusively used Zack Academy for this purpose, she decided to market all of her Illustra Pro occupational training services through Zack Academy, and to charge five dollars ($5.00) less than Metropolitan charged for the same course, so as to embarrass and outsell

10

Metropolitan in the marketplace.  Accordingly, Defendant secured all of the people she needed, along with the marketing methodology she needed, to unlawfully compete head-to-head with Metropolitan.

37.     Defendant Duarte breached her fiduciary duty to the Plaintiff by misappropriating Plaintiff's proprietary information and trade secrets for her own use in order to start a business in direct competition with Metropolitan.

38.     Online postings indicate that Defendant Duarte was actively engaged in her unlawful campaign to conspire with others to misappropriate and misuse Metropolitan trade secrets as early as March 24, 2020.

39.     Defendant Duarte, while pretending to engage in work for Metropolitan, was conspiring with Defendants Rodriguez, Romero, Holladay and Flores to injure the Plaintiff's business by stealing the Plaintiff's trade secrets, including Plaintiff's customer list, so that Defendants Duarte, Rodriguez and Romero could form two separate "Illustra Services, LLC" entities to operate an unlawfully competing business on both the east and west costs.

40.     In December of 2020, Defendant Duarte informed Metropolitan that she would accept their offer of employment, but informed Metropolitan that she had to leave the country temporarily to care for her Covid-19 infected Mother in Mexico City. Duarte never showed up for work, and the Plaintiff has not since heard from Duarte.

41.     During this time, Defendant Duarte, along with Defendants Rodriguez and Romero, formed the Virginia entity Illustra Services, LLC, developed a web site and began to solicit the Plaintiff's customers, in order to engage in a business in direct competition with the Plaintiff.  The Defendants used the Plaintiff's trade secrets in order to establish business relationships with Plaintiff's customers, trainers and marketing contacts.

42. Defendants Holladay and Flores have acted in concert and conspired with the other Defendants by conducting occupational training sessions on behalf of Illustra Pro in both webinars and live sessions. Defendant Holladay has executed Certificates of Completion for occupational training students of Illustra Pro. On line student review postings by Illustra Pro indicate that Defendant Flores provided occupational training sessions for Illustra Pro as early as August of 2020.

43. On or about January 24, 2021, and under Defendant Duarte's direction, Defendants caused a mass email advertising campaign of Illustra Pro's occupational training services to be emailed to customers of Metropolitan.

44. The Defendants accidentally sent one of those email advertisements to a member of Metropolitan's management team. That advertisement is attached hereto as Exhibit F and advertises the core programs of Metropolitan occupational training: OSHA 10 Maritime training, Fire Watch Certification, and Respiratory Fit Testing.

45. This new competitor, "Illustra Pro", was unknown to Plaintiff Metropolitan so Metropolitan did everything it could do online to find out who this new competitor is.

46. Google searches of "Illustra Pro" led to Facebook and LinkedIn postings which indicated that Defendant Flores was involved with Illustra Pro in violation of his contractual, statutory and common law duties to Metropolitan, which led to discovery of the Zack Academy connection, which led to the discovery of the "Illustra Services LLC" corporate filings which indicated that Defendants Duarte, Rodriguez and Romero were involved with Illustra Pro in violation of their contractual, statutory and common law duties to Metropolitan, which led to a decision to register for one or more of the Illustra Pro course offerings in the San Diego office, the Hampton, Virginia office, and a webinar version of the course, which led to the discovery

that Defendant Holladay was the Illustra Pro Trainer in violation of his contractual, statutory and common law duties to Metropolitan.

47.    Defendant Illustra – VA had to cancel one of its Hampton, Virginia course offerings and that caused Zack Academy to send out the schedule of alternate classes attached as Exhibit G.  This exhibit shows two and only two companies offering the courses in question: Illustra Pro and Metropolitan Solutions.  This is the perfect proof that defendants succeeded in acting in concert and conspiring together to unlawfully violate their contractual, statutory and common law duties to Metropolitan.

48.    As Metropolitan's inquiry into "Illustra Pro" progressed, it became irrefutably clear that:

A.    Because Illustra - CA was organized on June 1, 2020 by Defendants Duarte and Romero, these two employees were conspiring against Metropolitan for seven months while still on the Metropolitan payroll.

B.    Because Metropolitan was unaware of the conspiracy, it paid Duarte and Romero year-end bonuses equal to one week's pay, which Metropolitan would not have paid had it known of Duarte and Romero's unlawful conduct.

C.    Because Illustra - VA was organized on December 3, 2020 by Defendants Duarte and Rodriguez, these two employees were conspiring against Metropolitan for at least the month of December 2020 while Rodriguez was still on the Metropolitan payroll.

D.    Because Metropolitan was unaware of the conspiracy, it paid Rodriguez a year-end bonus equal to one week's pay, which Metropolitan would not have paid had it known of Rodriguez's unlawful conduct.

E.     When Rodriguez' position was eliminated and she was laid off in January of 2021, Metropolitan went out of its way to help Rodriguez secure unemployment benefits as soon as possible and to become reemployed as soon as possible.  Metropolitan did not know that she was already reemployed by a competing business.  On information and belief, Rodriguez did not inform the Virginia Employment Commission that she was re-employed by Illustra – VA.

F.     Defendant Flores's employment by Metropolitan overlapped with that of Duarte and Romero and he necessarily knew that engaging in a conspiracy to steal Metropolitan's occupational training customers was unlawful and violated his Nondisclosure Agreement with Metropolitan.  Online postings indicate that Defendant Flores provided his occupational training services to Illustra – CA and Illustra – VA directly through his sole proprietorship Main Deck as early as August of 2020.

G.     Defendant Holladay became actively engaged with the other Defendants in unlawfully conspiring against and competing with Metropolitan when he taught occupational training classes for Illustra – CA and Illustra – VA on February 24, 2021 and other dates. Holladay necessarily knew that engaging in a conspiracy to steal Metropolitan's occupational training customers was unlawful and violated his various legal duties to Metropolitan.

H.     Because of the records that are readily available from the California Secretary of State, Virginia State Corporation Commission and the San Diego County Department of Public Records, because of the online postings made concerning Defendant Flores' involvement with Illustra – CA and Illustra – VA, because the schedule of available classes provided online by Zack Academy showed  direct competition by Defendants to Metropolitan, because Holladay was a course instructor and signed OSHA 10 certification cards for Illustra Pro, and because Defendant Duarte identified herself on the phone and in email

communications for Illustra Pro as "Patricia Duarte" (with "cc" to Nick Flores @maindeck), the individual and collective involvement of all of the Defendants in the unlawful enterprise described above cannot be denied.

      I.     Because Defendants Duarte, Rodriguez, Romero, Flores and Holladay all knew of one another's Nondisclosure Agreements and obligations, and of the Metropolitan Handbook policies concerning the unauthorized disclosure of Metropolitan's trade secrets, non-competition, conflicts of interest, and self-dealing, and of one another's statutory and common law duties not to misappropriate Metropolitan's trade secrets, they all conspired with one another to tortiously interfere with the contractual relations that exist between and among the various Defendants and Metropolitan.

49.     All of the Defendants are continuing to misappropriate Metropolitan's trade secrets for their own benefit, causing ongoing economic damage to Metropolitan.

## COUNT ONE

### Violation of the Virginia Business Conspiracy Act

50.     The Plaintiff restates each and every allegation set forth above as if stated in full herein.

51.     All of the Defendants combined, agreed, associated, mutually undertook, concerted together and conspired to misappropriate the Plaintiff's trade secrets and proprietary information in order to willfully and maliciously injure the Plaintiff in its business in violation of Va. Code Ann. §18.2-499.

52.     As a result of the Defendants' violation of Va. Code Ann. 18.2-499, the Plaintiff has been injured in its reputation, trade and business.

15

53.     Pursuant to Va. Code Ann. 18.2-500, the Plaintiff demands judgment against the Defendants, jointly and severally, for an amount equal to *three times the actual damages* sustained (including reputational harm of no less than ONE HUNDRED THOUSAND DOLLARS ($100,000.00)), plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

## COUNT TWO

### Breach of Non-Disclosure Agreement by Defendant Rodriguez

54.     The Plaintiff restates each and every allegation set forth above as if fully stated herein.

55.     Defendant Rodriguez, pursuant to her execution of the Non-Disclosure Agreement attached hereto as Exhibit C, had a duty to not disclose, communicate, publish or use the Plaintiff's confidential information, and such duty continues beyond Rodriguez' period of employment by the Plaintiff.

56.     Defendant Rodriguez breached such duty to Plaintiff by using Plaintiff's confidential information in order to form her own competing business with Defendants Duarte and Romero.

57.     As a direct and proximate result of Rodriguez' breach of the Non-Disclosure Agreement, the Plaintiff has suffered damages.

58.     In addition to ONE HUNDRED THOUSAND DOLLARS $100,000.00) for actual damages, the Plaintiff seeks and is entitled to injunctive relief requiring Defendant Rodriguez to cease and desist her on-going violation of the Non-Disclosure Agreement, and ordering Rodriguez to disgorge any monies she realized through her unlawful conduct as described above (including disgorgement of her year-end bonus).

## COUNT THREE

### Breach of Fiduciary Duty to Plaintiff by Defendant Rodriguez

59.     The Plaintiff restates each and every allegation set forth above as if fully stated herein.

60.     Defendant Rodriguez, while employed by Metropolitan, and within the Commonwealth of Virginia, owed a fiduciary duty to her employer, the Plaintiff, to protect its confidential and proprietary information and to not misappropriate such information for her own use.

61.     By taking and misappropriating the Plaintiff's confidential and proprietary information and using it to start her own business in direct competition to the Plaintiff's business, Defendant Rodriguez breached her fiduciary duty to the Plaintiff.

62.     As a direct and proximate result of Defendant Rodriguez's breach of fiduciary duty, the Plaintiff has suffered damages.

63.     The fact that while the Plaintiff rightfully believed that it was paying Rodriguez to work on its behalf, Rodriguez was in fact getting paid to steal from her employer, justifies an award of punitive damages.

64.     In addition to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), the Plaintiff seeks injunctive relief requiring the Defendant Rodriguez to cease and desist her on-going violations of the Agreement, and to terminate all economic ties with all of the other Defendants.

## COUNT FOUR

### Conversion

65.     The Plaintiff restates each and every allegation set forth above as if fully stated herein.

66.     The Plaintiff is the rightful and exclusive owner of its trade secrets and other proprietary information, including, but not limited to, its customer lists, its marketing contacts and methodology, and unique occupational training procedures.

67.     All of the Defendants unlawfully used the Plaintiff's trade secrets and proprietary information by taking such information from the Plaintiff's exclusive possession for their own benefit in order to start a business operation with offices on both Coasts which in direct competition to the Plaintiff, devaluing such trade secrets and proprietary information and negating all of Plaintiff's previous efforts to protect such information.

68.     Due to the fact that Defendants Duarte, Rodriguez and Romero were all paid employees of the Plaintiff while they were converting Plaintiff's property for their own use, and Defendants Holladay and Flores knew Duarte, Rodriguez and Romero were so employed, the actions of all defendants were egregious and outrageous, justifying an award of punitive damages.

68.     As a direct and proximate result of the Defendants conversion of the Plaintiff's property for their own use, with the intention of permanently depriving the Plaintiff of the value of such property, the Plaintiff has suffered economic damages in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and is entitled to an award of punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

69.     As a result of the Defendants' acts of conversion, all of the Defendants are liable, jointly and severally, to Plaintiff Metropolitan for the fair market value of the Metropolitan trade secrets in an amount of no less than ONE HUNDRED THOUSAND DOLLARS ($100,000.00), plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

## COUNT FIVE

### Common Law Civil Conspiracy

70.     The Plaintiff restates each and every allegation set forth above as if stated in full herein.

71.     The Defendants combined, agreed, associated, mutually undertook, concerted together and conspired to misappropriate the Plaintiff's proprietary information and trade secrets by unlawful means in order to cause harm to the Plaintiff's reputation, trade or business.

72.     As a direct and proximate result of such combination, agreement, association, mutual undertaking, concert and conspiracy, the Plaintiff has suffered monetary damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

## COUNT SIX

### Violation of the Virginia Uniform Trade Secrets Act

73.     The Plaintiff restates each and every allegation set forth above as if stated in full herein.

74.     The Plaintiff's occupational training customer lists, occupational training methods and procedures, and marketing contacts are information which derives independent economic

value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value by its disclosure or use.

75.    The Plaintiff made reasonable efforts under the circumstances to maintain the secrecy of its trade secrets and proprietary information.

76.    Each of the Defendants learned of the Plaintiff's trade secrets under circumstances giving rise to a duty to maintain the secrecy of those trade secrets and to limit the use of those trade secrets.

77.    At the time they learned of the Plaintiff's trade secrets and proprietary information, all of the Defendants knew that the information was derived from a person or persons who owed a duty to the Plaintiff to maintain the secrecy of those trade secrets.

78.    Defendants' misappropriation of the Plaintiff's trade secrets and proprietary information was without the Plaintiff's express or implied permission.

79.    Defendants' misappropriation of the Plaintiff's trade secrets and proprietary information was an intentional, well planned, malicious and willful scheme by the Defendants which took place while the Plaintiff believed it had a trusted relationship with all the Defendants except Defendants Illustra – CA and Illustra – VA.

80.    All of the Defendants have violated the Virginia Uniform Trade Secrets Act, Va. Code Ann. §§59.1-336 *et seq.*

81.    By using the Plaintiff's trade secrets and proprietary information to conduct the businesses of Illustra – CA and Illustra – VA, the Defendants have been unjustly enriched.

82.    As a direct and proximate result of the Defendants' misappropriation of the Plaintiff's trade secrets and proprietary information, the Plaintiff has incurred economic damages of no less than ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($175,000.00),

and due to the Defendants' willful and malicious misappropriation of the Plaintiff's trade secrets, Plaintiff is entitled to recover its actual damages, plus punitive damages not to exceed twice the amount of actual damages it incurred or THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), whichever is less, pursuant to Va. Code Ann. §59.1-338, plus reasonable attorney's fees pursuant to Va. Code Ann. §59.1-338.1.

**COUNT SEVEN**

**Violation of California Uniform Trade Secrets Act**

83.    The Plaintiff restates each and every allegation set forth above as if fully stated herein.

84.    All of the Defendants have violated the California Uniform Trade Secrets Act, Cal. Civ. Code §§3426 *et seq.*

85.    By using the Plaintiff's trade secrets and proprietary information to conduct the businesses of Illustra – CA and Illustra – VA, the Defendants have been unjustly enriched.

86.    As a direct and proximate result of the Defendants' misappropriation of the Plaintiff's trade secrets and proprietary information, the Plaintiff has incurred economic damages, and due to the Defendants' willful and malicious misappropriation of the Plaintiff's trade secrets, the Plaintiff is entitled to recover its actual damages of no less than ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($175,000.00), plus punitive damages in an amount not to exceed twice the award of actual damages pursuant to Cal. Civ. Code §3426.3(c), plus reasonable attorney's fees pursuant to Cal. Civ. Code §3426.4.

**COUNT EIGHT**

**Breach of Non-Disclosure Agreement by Defendant Flores**

87.     The Plaintiff restates each and every allegation set forth above as if fully stated herein.

88.     Defendant Flores, pursuant to the execution of his Non-Disclosure Agreement with Metropolitan, had a duty to not disclose, communicate, publish or use the Plaintiff's confidential information, and such duty continues beyond Flores' period of employment by the Plaintiff.

89.     Defendant Flores breached such duty to the Plaintiff by using Plaintiff's confidential information while being employed as a trainer for Illustra – CA, directly or through his sole proprietorship Main Deck.

90.     As a direct and proximate result of Flores' breach of the Non-Disclosure Agreement, the Plaintiff has suffered damages.

91.     In addition to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, the Plaintiff seeks and is entitled to injunctive relief requiring the Defendant Flores to cease and desist his continuing violation of the Non-Disclosure Agreement, and ordering Flores to disgorge any monies realized through his unlawful conduct as described above.

## COUNT NINE

### Breach of Non-Disclosure Agreement by Defendant Holladay

92.     The Plaintiff restates each and every allegation set forth above as if fully stated herein.

93.     Defendant Holladay, pursuant to his execution of the Non-Disclosure Agreement, had a duty to not disclose, communicate, publish or use the Plaintiff's confidential information, and such duty continues beyond Holladay's period of employment by the Plaintiff.

94.     Defendant Holladay breached such duty to Plaintiff by using Plaintiff's confidential information while being employed as a Trainer for Illustra – CA and/or Illustra – VA and or Main Deck.

95.     As a direct and proximate result of Holladay's breach of the Non-Disclosure Agreement, the Plaintiff has suffered damages.

96.     In addition to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, the Plaintiff seeks and is entitled to injunctive relief requiring Defendant Holladay to cease and desist his continuing violation of the Non-Disclosure Agreement, and ordering Holladay to disgorge any monies he realized through his unlawful conduct as described above.

## COUNT TEN

### Breach of Agreement Not to Disclose and Compete and Employee Confidentiality Agreement BY Defendant Romero

97.     The Plaintiff restates each and every allegation set forth above as if fully stated herein.

98.     Defendant Romero, pursuant to her execution of the "Agreement Not to Disclose and Compete" and the "Employee Confidentiality Agreement", had a duty not to disclose Plaintiff's confidential information to any third party or to use it for her own benefit, not to accept employment with any person or entity which was a customer or client of the Plaintiff if such customer or client conducts business in competition with the Plaintiff.

99.     Defendant Romero breached such duties to the Plaintiff by using Plaintiff's confidential information in order to start a competing business with Defendant Duarte, and by becoming employed or associated with Defendants Duarte and Illustra – CA.

23

100.   As a direct and proximate result of Romero's breach of the Agreements, the Plaintiff has suffered damages.

101.   In addition to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, the Plaintiff seeks injunctive relief requiring the Defendant Romero to cease and desist her continuing violations of the Agreements and to terminate all economic ties with Defendants Duarte, Illustra - CA, Illustra – VA, and the other individual Defendants. Plaintiff also seeks the entry of an order requiring Romero to disgorge any monies she realized through her unlawful conduct as described above (including disgorgement of the year-end bonus).

## COUNT ELEVEN

### Breach of Fiduciary Duty to Plaintiff by Defendant Duarte

102.   The Plaintiff restates each and every allegation set forth above as if fully stated herein.

103.   Defendant Duarte, while performing contract work under the business PMD Interactive, and within the State of California, owed a fiduciary duty to her client, the Plaintiff, to protect the Plaintiff's confidential and proprietary information which was disclosed to her, and to not misappropriate such information for her own use.

104.   By taking and misappropriating the Plaintiff's confidential and proprietary information and using it to start her own competing business, Defendant Duarte breached her fiduciary duty to the Plaintiff.

105.   As a direct and proximate result of Defendant Duarte's breach of fiduciary duty, the Plaintiff has suffered damages.

106.    In consideration of the fact that while the Plaintiff rightfully believed that it was paying Duarte to work on its behalf, Duarte was in fact getting paid to steal from Metropolitan clients, justifying an award of punitive damages.

107.    In addition to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), the Plaintiff seeks injunctive relief requiring the Defendant Duarte to cease and desist from her on-going violations of her fiduciary duty, and to terminate all economic ties with Defendants Romero, Rodriguez, Illustra - CA, Illustra – VA, and the other individual Defendants.  Plaintiff also seeks the entry of an order requiring Duarte to disgorge any monies she realized through her unlawful conduct as described above (including disgorgement of the approximately FORTY-FIVE THOUSAND DOLLARS ($45,000.00) she was paid in 2020 while she was actively pursuing her plan to misappropriate the Plaintiff's confidential and proprietary information and using it to start her own competing business).

## COUNT TWELVE

### Tortious Interference with Contractual Relations

108.    The Plaintiff restates each and every allegation set forth above as if fully stated herein.

109.    Valid contractual relationships existed between Metropolitan and the Defendants when Defendants started to conspire together to misappropriate and use the trade secrets of Metropolitan.

110.    All of the Defendants knew of one another's Nondisclosure Agreements and obligations, and they all knew of one another's contractual undertakings under the Metropolitan

Handbook concerning the unauthorized disclosure of Metropolitan's trade secrets, non-competition, self-dealing and conflict of interest.

111.    All of the Defendants intentionally interfered with one another's contractual relations with Metropolitan.

112.    Metropolitan has suffered financial damages as a direct result of the Defendants' intentional tortious interference with Metropolitan's contractual relationships.

113.    As a result of the Defendants' tortious conduct, all of the Defendants are liable, jointly and severally, to Plaintiff Metropolitan for actual damages of no less than ONE HUNDRED THOUSAND DOLLARS ($100,000.00), plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

## TRIAL BY JURY

114.    Plaintiff demands trial by jury as to all counts.

**WHEREFORE, THE PLAINTIFF DEMANDS THE FOLLOWING RELIEF:**

A.    With respect to COUNT ONE herein, judgment against all the Defendants, jointly and severally in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) *to be trebled* pursuant to Va. Code Ann. 18.2-500, plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), and reasonable attorney's fees and court costs.

B.    With respect to COUNT TWO herein, judgment against Defendant Rodriquez in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages plus reasonable attorney's fees and court costs; the Plaintiff also seeks and is entitled to injunctive relief requiring Defendant Rodriguez to cease and desist her on-going violation of the Non-Disclosure Agreement, ordering Rodriguez to disgorge any monies she realized through her

unlawful conduct as described above (including disgorgement of the year-end bonus), and ordering Rodriguez to terminate all economic ties with all of the other Defendants.

      C.    With respect to COUNT THREE herein, judgment against Defendant Rodriquez in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) in actual damages, plus punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

      D.    With respect to COUNT FOUR herein, judgment against all the Defendants, jointly and severally, in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), plus punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

      E.    With respect to COUNT FIVE herein, judgment against all the Defendants, jointly and severally, in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, plus punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

      F.    With respect to COUNT SIX herein, judgment against all Defendants, jointly and severally, for actual damages in the amount of ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($175,000.00), plus punitive damages not to exceed twice the actual damages it incurred or THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), whichever is less, pursuant to Va. Code Ann. §59.1-338, plus reasonable attorney's fees pursuant to Va. Code Ann. §59.1-338.1.

      G.    With respect to COUNT SEVEN herein, judgment against all Defendants, jointly and severally, for actual damages of no less than ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($175,000.00), plus punitive damages in an amount not to exceed

twice the award of actual damages pursuant to <u>Cal. Civ. Code</u> §3426.3(c), plus reasonable attorney's fees pursuant to <u>Cal. Civ. Code</u> §3426.4.

H.      With respect to COUNT EIGHT herein, judgment against Defendant Flores in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, plus reasonable attorney's fees and court costs, plus injunctive relief requiring Defendant Flores to cease and desist his on-going violation of the Non-Disclosure Agreement, ordering Flores to disgorge any monies he realized through his unlawful conduct as described above, and ordering Flores to terminate all economic ties with all of the other Defendants.

I.      With respect to COUNT NINE herein, judgment against Defendant Holladay in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, plus reasonable attorney's fees and court costs, plus injunctive relief requiring Defendant Holladay to cease and desist his on-going violation of the Non-Disclosure Agreement, ordering Holladay to disgorge any monies he realized through his unlawful conduct as described above, and ordering Holladay to terminate all economic ties with all of the other Defendants.

J.      With respect to COUNT TEN herein, judgment against Defendant Romero in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00)  for actual damages, plus reasonable attorney's fees and court costs, plus injunctive relief requiring Defendant Romero to cease and desist her on-going violation of the Non-Disclosure Agreement, ordering Romero to disgorge any monies she realized through her unlawful conduct as described above (including disgorgement of her year-end bonus), and ordering Romero to terminate all economic ties with all of the other Defendants.

K.      With respect to COUNT ELEVEN herein, judgment against Defendant Duarte in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages,

plus punitive damages of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs, plus injunctive relief requiring Defendant Duarte to cease and desist her on-going violation of her fiduciary duty to Metropolitan, ordering Duarte to disgorge any monies she realized through her unlawful conduct as described above (including disgorgement of her year-end bonus and her 2020 salary of FORTY-FIVE THOUSAND DOLLARS, and the training course reimbursement of more than EIGHT HUNDRED DOLLARS), and ordering Duarte to terminate all economic ties with all of the other Defendants.

L.    With respect to COUNT TWELVE herein, judgment against all of the Defendants, jointly and severally, in the amount ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for actual damages, plus an award of punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00), plus reasonable attorney's fees and court costs.

M.    Such other and further relief as this Court deems appropriate.

Respectfully submitted,

**METROPOLITAN SOLUTIONS GROUP, INC.**

By: _____
         Of Counsel

Stephen E. Heretick, Esquire
Virginia Bar No. 29919
STEPHEN E. HERETICK, P.C.
715 Loudoun Avenue
Portsmouth, Virginia  23707
(757) 397-9923
(757) 397-9925 (fax)
Email: steve@heuticklaw.com
*Counsel for the Plaintiff, Metropolitan Solutions Group, Inc.*